# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSY

| | |
|---|---|
| A.M.E. INC., | : |
| | : |
| PLAINTIFF, | : |
| | : |
| VS. | : |
| | : |
| | : CASE NO.: 2:22-CV-5211 (EP)(CLW) |
| T.R. RICOTTA ELECTRIC, INC., | : |
| THOMAS RICOTTA, HATZEL & | : |
| BUEHLER, INC., JOHN/JANE DOES | : |
| 1-10 (FICTITIOUS), | : |
| | : |
| DEFENDANTS. | : |
| | : |

## PLAINITFF A.ME., INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HATZEL & BUEHLER'S MOTION TO DISMISS THE COMPLAINT

On the Brief:

Steven T. Keppler
**TESSER & COHEN, P.C.**
946 Main Street
Hackensack, New Jersey 07601
(201) 343-1100
skeppler@tessercohen.com

Dated: October 19, 2022

Plaintiff A.M.E., Inc. ("AME" or "Plaintiff") hereby respectfully submits this memorandum of law in opposition to the Motion to Dismiss (the "Motion") filed by Defendant Hatzel & Buehler, Inc. ("H&B" or "Defendant") and would say as follows:

## PRELIMINARY STATEMENT

This lawsuit stems from Defendants T.R. Ricotta Electric, Inc. ("TRR") and Thomas Ricotta's ("Ricotta") (collectively, the "Ricotta Defendants") unlawful and unjustifiable breaches of a certain subcontract agreement with AME under which the Ricotta Defendants agreed to perform certain electrical work on a high-profile Manhattan construction project known as the "Lincoln Center David Geffen Hall Project" (the "Project.")  As set forth in the Complaint filed in this action, after the Ricotta Defendants walked off the job, AME was forced to spend millions of dollars to replace their efforts and maintain the Project schedule as it pertained to TRR's scope of work.

AME included H&B in this action because it learned, pre-litigation, that TRR was selling substantially all of its assets to H&B in an effort to avoid liability to AME.  AME communicated its demand for repayment of the millions of dollars spent as a result of the Ricotta Defendants' breach of the subcontract on May 12, 2022.  The sale to H&B occurred roughly two weeks later, and the Project was conspicuously absent from the ledgers utilized in the asset purchase agreement ("APA")[1].  AME has alleged this absence was intentional in order to shield both entities (TRR *and* H&B) from liability and amounts to a fraudulent conveyance.  Moreover, because H&B assumed certain risks and liabilities of TRR, AME has alleged H&B stands in TRR's shoes and is responsible for its breach of the subcontract.

---

[1]    AME notes that H&B has included this agreement as an exhibit to the Certification of Michael C. Goeller (DE 7-2, 7-3).  AME will not comment on H&B's pejorative hypothecations regarding the use of that document as an exhibit to the original Complaint.

H&B's motion should be denied for the reasons set forth in more detail below, but, in brief, amount to the following: H&B's APA with TRR, and the intent of those parties in executing it, is and ought properly be the subject of discovery and not a dispositive motion before all facts are known and of record, and relatedly, Robert Finn, who was an executive of TRR, was retained by H&B and clearly and unequivocally had knowledge of not only TRR's breach, but the fact that TRR improperly failed to account for the asset/liability represented by the subcontract with AME in the APA.

Therefore, the Court should DENY the Motion and H&B should remain in this dispute.

## STATEMENT OF RELEVANT PROCEDURAL HISTORY

AME initially filed its Complaint (and related documentation) with the Superior Court of New Jersey on August 9, 2022. DE No. 1-2. AME served Defendant H&B August 12, 2022, and thereafter filed an affidavit of service with the Superior Court of New Jersey. DE 1-3. H&B removed this action to this Court on August 31, 2022. DE 1. On October 3, 2022, H&B moved to dismiss the Complaint as to H&B. *See* DE 7. This Opposition follows.

## STATEMENT OF RELEVANT FACTS

H&B's Motion was brought under *Fed. R. Civ. P.* 12(b)(6) and, as such, the only facts in the record are those found in AME's Complaint.[2] That said, Defendant's Motion introduces facts, in the form of the Certification of Michael C. Goeller (the "Goeller Cert.") and the exhibit annexed thereto, include some facts which fall outside the four corners of that document.[3] The Complaint

---

[2]     This Court, for the purposes of this Motion, is obligated to take all well-pleaded allegation in the complaint as true and view them in the light most favorable to the plaintiff." *Pitman v. Ottehberg*, No. 10-2538 2015 U.S. Dist. LEXIS 4438, *12 (D.N.J. Jan. 14, 2015 (citing *Evancho v. Fisher*, 423 F.2d 347, 350 (3d Cir. 2005)).

[3]     Though this Court may review documents, such as the APA, which are outside the scope of the pleadings where their contents are "alleged in the complaint and whose authenticity no party questions," (*Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 560 (3d Cir. 2002)) it should

contains the facts which comprise this dispute and, to the extent those facts speak to the present Motion, they are recited here in brief. That said, AME relies upon each and every allegation of the Complaint and incorporates same by reference as if they were set forth fully and at length herein. *See* DE 1-2.

Briefly then, AME was hired as a subcontractor on the Project and, in that capacity, entered into a sub-subcontract with TRR (the "Subcontract") by and through which TRR was to perform the electrical portion of the HVAC controls installation. Compl. ¶¶16-17.[4] Some months later, the general contractor, Turner Construction Company ("TCC") advised AME that TRR's on-site foreman was, in TCC and the Owner's estimation, unsafe with respect to health and safety standards, refused to participate in safety meetings, and was not generally competent. *Id*. ¶ 18. TCC, on behalf of itself and the Owner, requested TRR provide a new foreperson. *Id*. ¶ 19. AME, in turn, conveyed this message to TRR, who refused to provide an alternate foreperson, thereafter, walked off the job, and refused to return. *Id*. ¶¶ 20-22. TRR was provided written notice of the default, but dd not return to the Project *Id*. ¶ 24.

In order to complete the scope of work assigned to TRR and maintain the Project schedule, AME was forced to retain a different sub-subcontractor, which was engaged to remediate TRR's deficient work and complete the job, costing AME approximately $4.5 million. *Id*. ¶¶ 23, 25. TRR ignored that notice and on May 12, 2022, by email and first-class mail, AME sent TRR renewed notice of the default. *Id*. ¶¶ 26-27. Exactly two weeks later, on May 26, 2022, TRR and H&B entered into the APA. *Id*. 28.

---

not consider the Goeller Cert. for the purposes of this motion because it is not information incorporated by reference to the allegations in the Complaint itself.

[4] All references to the Complaint are references to DE 1-2.

H&B did not blindly enter into the APA – it did so through a period (of unknown length) of due diligence. *Id.* ¶ 29. H&B agreed to assume certain assets and/or liabilities of TRR, and not others, as part of their agreement, and these assets and/or liabilities were purportedly contained in an exhibit to the APA known as the Project List, as well as other physical assets and certain "Work-in-Progress projects on a separate list. *Id.* ¶¶ 30, 34. Conspicuously, neither the Project List nor the Works-in-Progress List include the Project at issue in this litigation. *Id.* ¶ 31. Indeed, TRR clearly knew about the Project and its default of its obligations regarding same but did not include that information in the Project List. *Id.* ¶ 32. Strikingly, H&B was in a position to know about the Project because (A) its due diligence period clearly occurred while the Project was ongoing (*id* at ¶ 29) and (B) H&B hired Robert Finn, formerly a Vice President at TRR, to manage its subsidiary, Blue Sky Controls. *See* Certification of Steven T. Keppler ("Keppler Cert.") filed herewith, ¶¶ 2-4 Ex. A.[5] The APA makes clear that TRR was winding down its business at a time where it knew it was in default on the AME Project and it did not include that Project in the APA, either as a transferred asset/liability *or* a retained one. *Id.*¶¶ 37-38.

AME alleges that H&B had knowledge of the Project – by virtue of its due diligence period's timing and the retention of a key TRR executive who clearly was, himself, on notice of the Project and the default – and has therefore assumed responsibility for the Project. Alternatively, AME alleges that H&B participated in a fraudulent transfer intended to defeat AME's rights by virtue of the same knowledge and conduct. To the extent H&B created Blue Sky Controls for another purpose, or its initial reasons for targeting TRR for acquisition[6] may have

---

[5]    AME was not aware that Mr. Finn was hired by H&B to run Blue Sky Controls until September 22, 2022 as AME was engaged in its continued due diligence in an effort to serve Defendants TRR and Ricotta. *See* Keppler Cert. ¶¶ 2-4., Ex. A.

[6]    Strikingly, Defendant's Motion does not include crucial information relating to its decision to acquire TRR, including the identity of the party who recommended the acquisition in the first

been for another purpose other than to defraud, that is wholly irrelevant for the present inquiry. Similarly, the express language in the contracts – which H&B highlights in its motion – are not relevant at this stage in the proceedings because the contracts are conspicuously silent as to the Project. The contractual language cannot, therefore, answer the question of whether a fraud has occurred, or whether H&B has liability to AME.

Ultimately, the APA closed May 26, 2022, a fact that AME was not aware of until after the fact. Compl. ¶ 33. AME made a final attempt to resolve the dispute by issuing a formal notice of claim to H&B in correspondence dated June 22, 2022[7], which was ignored. *Id*. ¶ 33. Left with no choice, suit was initiated. *See, generally,* Complaint.

## LEGAL ARGUMENT

### I.    THE APPLICABLE STANDARD OF REVIEW

On a 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Pitman v. Ottehberg*, No. 10-2538 2015 U.S. Dist. LEXIS 4438, *12 (D.N.J. Jan. 14, 2015 (citing *Evancho v. Fisher*, 423 F.2d 347, 350 (3d Cir. 2005)); *see, also, In re Ins. Brokerage Antitrust Litig*., 618 F.3d 300, 314 (3d Cir. 2010). The Court's analysis is guided by *Fed. R. Civ. P*. 8(a)(2), which requires the complaint include a "short and plain statement of the claim showing the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009). *Rule* 8 "does not require 'detailed factual allegations' but it demands more than an unadorned, the-

---

place. This is more than a curious omission, as the identity of that individual may be material to AME's claims. Discovery is warranted on this issue, which tends to undermine Defendant's Motion.

[7]      H&B facetiously suggests "AME provided no specifics of this notice" in its moving papers (*see* Def. Br. at 7), yet H&B has a copy of the document in question and, therefore, its rhetoric is toothless. The fact that notice was sent is the salient fact at this stage of the inquiry, not the contents of that notice.

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986))); *see, also, Pittman v. Ottehberg*, 2015 U.S. Dist. LEXIS 4438 at *12 (quoting *Phillips v. Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008)).

The "short and plain statement" must "state a claim to relief that is plausible on its face." *Iqbal* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957))). The allegations cannot be merely speculative. *Id.* The complaint must "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Twombly* at 555 (quoting *Conley v. Gibson*, 355 U.S. at 47, *overruled in part by Twombly*, 550 U.S. 554)). A claim is plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678 (citing *Twombly* at 556).

That said, a complaint that pleads facts which are "merely consistent with" liability has stopped "short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly* at 557). It requires more than mere labels and conclusions because "a formulaic recitation of the elements of the cause of action will not do." *Twombly* at 555 (citing *Papasan v. Allain*, 478 U.S. at 286).

Ultimately, the inquiry at bar is limited. The Court is asked only "whether the claimant is entitled to offer evidence supporting the claims." *Twombly* at 563, n.8; *Iqbal* at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'") Not only must the Court ay review the complaint itself, but is must also documents annexed thereto and matters of public record. *Pitman* at * 13 (citing *Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764 (3d Cir.

2013)).  To the extent that documents are referenced in the complaint and not annexed thereto, the Court may review those if they are made part of the record and not objected to, as well.  *See Pryor v. Nat'l Collegiate Athletic Ass'n*., 288 F.3d 548, 560 (3d Cir. 2002).

In addition to the foregoing, where fraud is plead, the *Federal Rules of Civil Procedure* imposes a heightened pleading standard.  In such cases, the plaintiff "must state with particularity the circumstances constituting fraud or mistake."  *Fed. R. Civ. P.* 9.  This standard applies equally to claims plead under common law or statute.  *Dewy v. Volkswagen AG*, 558 F. Supp.2d 505, 524 (D.N.J. 2008) (citing *Naporano Iron & Metal Co. . Am. Crane Corp.*) 79 F. Supp.2d 494, 512 (D.N.J. 1999)); *see, also, Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 U.S. Dist. LEXIS 2570, * 2 (D.N.J. Jan. 14, 2008); *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp.2d 535, 538 (D.N.J. 2008).

The purpose of *Rule* 9(b) is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges or immoral and fraudulent behavior."  *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp.2d at 538 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  That said, "courts should not focus exclusively on the 'particularity' language because doing so 'fails to take [into] account the general simplicity and flexibility contemplated by the rules.'"  *Id*. (quoting *Christidis v. First Pennsylvania Mortg. Trust.*, 717 F.2d 96, 100 (3d Cir. 1983)) (brackets in original). Indeed, while the plaintiff can provide the "date, place, and time of the fraudulent activity" that is not strictly required, so long as the plaintiff's allegations contain sufficient "precision and substantiation."  *Id*. (citing *Seville Indus. Mach. Corp.*, 742 F.2d at 791).

Defendant is simply wrong to suggest the Complaint does not meet these standards, or perhaps has confused it with that of a motion for summary judgment. Regardless, the Court should find that Plaintiff's Complaint is properly plead and deny Defendant its relief.

## II.    AME'S COMPLAINT MEETS THE APPLICABLE STANDARD AND SHOULD NOT BE DISMISSED

AME's Complaint is properly pled as to all defendants, including H&B and this Court should not grant H&B's requested relief for the foregoing reasons.

### A.    The Fifth Count of the Complaint, Fraudulent Transfer, is Properly Pled.

AME alleged in the Complaint that the APA between TRR and H&B was and is a fraudulent transfer in violation of the New Jersey Uniform Fraudulent Transfer Act, *N.J.S.A.* §§ 25:2-20 *et seq*. (the "UFTA"). Here, Plaintiff was, at the time of the transfer, a "present creditor" and the transfer is voidable as to AME pursuant to *N.J.S.A.* § 25:2-25. Under the applicable statutory section, a "transfer made or obligation incurred by a debtor is voidable as to a creditor…if the debtor made the transfer or incurred the obligation: (1) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor..." *N.J.S.A.* § 25:2-25(a)(1). The thrust of such a claim is to establish that a defendant debtor has placed its property beyond the reach of the plaintiff in an effort to "deliberately cheat" AME "by removing [its] property from the 'jaws of execution.'" *Gilchinsky v. Nat'l Westminster Bank, N.J.*, 159 N.J. 463, 475, 732 A.2d 482, 487 (N.J. 1999) (citing *Klein v. Rossi*, 251 F. Supp. 1, 2 (E.D.N.Y. 1966)).

This Court must engage in two, separate inquiries. First, whether the defendant has "'put some asset beyond the reach of creditors which would have been available to them' at some point in time "but for the conveyance." *Id.* (quoting *In re Wolensky's Ltd. Partnership*, 163 B.R. 615, 626-27 (Bankr. D.C. 1993) (string cite omitted). Second, "whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor." *Id.* at 476, 732 A.2d 489. As the

*Gilchinsky* court observed, transfers are fraudulent where they are "calculated to hinder, delay, or defeat collection of a known debt…because of the debtor's intent to withdraw the assets from the reach of process." *Id*. (citations omitted).    These two questions require "fact-specific determinations that must be resolved on a case-by-case basis.[8]" *Id*.  AME has properly plead such a claim here.

As a threshold matter, H&B wastes considerable ink discussing various unpled theories of successor liability.  To the extent that H&B argues successor liability is limited to a discrete series of exceptions to the generally understood rule barring such claims, AME agrees. *See Lefever v. K. Hovnanian Enters., Inc.*, 160 N.J. 307, 310, 734 A.2d 290 (N.J. 1999). Indeed, the caselaw is clear that such liability only lies where:

> (1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities.

*Thompson v. Real Estate Mortg. Network*, 748 F. 3d 142, 150 (3d Cir. 2014) (citing *Ramirez v. Amstead Indus., Inc.*, 86 N.J. 332, 431 A.2d 811, 815 (N.J. 1981)).  AME's Complaint makes clear (though H&B appears confused on this point) that TRR's sale of substantially all of its assets to H&B was a fraudulent transaction designed to escape liability to AME for its default and the resulting costs. *See* Compl., Fifth Count, generally; *see, also,* ¶ 38. Defendant's arguments, to the extent they address the fraudulent transfer argument, speak to the contents of the contract itself, which has a conspicuous absence with respect to the Project in question.  *See, generally,* Def. Br. at 12-15.  These arguments are more appropriate for a motion for summary judgment, as they rely upon not only allegations of fact not present in the Complaint, but also facts not present

---

[8]    Indeed, this fact-specific analysis, alone, mitigates strongly against granting dispositive relief before all facts are known, much less placed before the Court.

in the APA itself.  The Court should, therefore, view the Defendant's reasoning with a healthy dose of skepticism.

More substantively, Defendant first argues – incorrectly – that "Plaintiff has not adequately plead that either H&B or the Ricotta Defendants had the "actual intent" to hinder, delay, or defraud it."  *See* Def. Br. at 13. Curiously, Defendant points only to ¶¶ 16-27 of the Complaint, which detail the material breach of the Subcontract by TRR to make this argument.  *See* Def. Br. at 14. Of course, this ignores the allegations in Paragraph 38 of the Complaint entirely, which reads:

> "Upon information and belief, **TRR's failure to include the Project in the APA**, coupled with **its clear intention to cease operating, at least as to TRR, in May 2022 signified a clear attempt to avoid its obligations under the Subcontract as identified in the May 12th Notice.**"

*See* Compl. ¶ 38 (emphasis added).  It also ignores Paragraph 63, which reads:

> **The APA was executed in order to avoid obligations to AME**, insofar as it effectively terminated TRR's business operations, use of its name, and transferred not only virtually all open projects, but also materials, equipment, accounts receivable, and other items to H&B.

*See* Compl. ¶ 63[9].  In short, the Complaint contains sufficient allegations by which the Defendants may ascertain the "precise misconduct with which they are charged."  *Ford*, 529 F. Supp.2d at 538.

That Defendant would argue the Complaint is "completely devoid of any allegation that H&B knew of Plaintiff or the Project" is not relevant.  *See* Def. Br. at 13.  Further, and as noted above, *Rule* 9(b)'s requirements are met here: AME has adequately plead, with sufficient "precision and substantiation" the facts which establish the fraudulent transfer.  Namely, that TRR knew it was indebted to AME and transferred substantially all of its assets to H&B, while

---

[9]    This is not to say these are the *sole* references to the fraudulent transfer in the Complaint. The Court will note that supporting allegations may be found in ¶¶ 26-39, inclusive, as well as Count Five itself (¶¶ 60-67).

conspicuously failing to account for the Project and the indebtedness to AME in an effort designed to avoid paying AME. *See* Compl. ¶¶26-39.[10] AME knows of no requirement at law that H&B knowingly participate in the fraud for the transfer to be fraudulent and Defendant has not cited to such a requirement in its papers. That said, and as set forth elsewhere herein, Robert Finn was, at all times relevant hereto, well aware of the Project, TRR's indebtedness, and TRR's material breach of the Subcontract and H&B retained his services after acquiring TRR to run Blue Sky Controls. *See* Keppler Cert. ¶¶ 2-4 Ex. A. Therefore, it is fair to impute that knowledge to H&B.

Defendant is mistaken when it argues that AME was obligated to "allege the essential factual background that would accompany the first paragraph of any newspaper story – that is, the 'who, what, when, where, and how of the events at issue.'" Def. Br. at 13 (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citation omitted). As a threshold matter, *In re Suprema* is so factually distinct from the present litigation that its applicability here is seriously in question. That matter dealt with significant, criminal securities fraud, a class action, and violations of various, federal securities laws…none of which are present here. Strikingly, the court's *Rule* 9(b) analysis focused on the factual predicates for the federal statutory claims and the specific factual predicates required under the relevant, defined federal statutes and regulations which were allegedly violated. None of those are at issue here and Defendant's reliance upon *In re Suprema* is misplaced.

The Third Circuit noted that "**[a]s applied to Section 10(b) claims**…*Rule* 9(b) requires, at a minimum, that plaintiffs support their allegations **of securities fraud** with all of the essential factual background…" *In re Suprema*, 438 F.3d 276 (emphasis added). While it may be true that

---

[10]    AME agrees that these paragraphs describe a breach of contract claim, and indeed form the factual basis for those claims.

the pleading standard imposed by *Rule* 9(b) is met by such an exacting standard, *this is not the minimum standard in the present case*. Indeed, *Ford* was decided two years <u>after</u> *In re Suprema* and is not hampered by the wildly divergent facts and law present there. Therefore, the Court should refuse to accept Defendant's articulation of the applicable standard in favor of the actual law on point, which is distilled in *Ford*.

Next, Defendant argues no fraudulent transfer exists because the facts alleged do not support such a finding when engaging in the analysis set forth in *Gilchinsky*. They are mistaken. As an initial matter, *Gilchinsky* clearly states that the Court should engage in a "fact-specific determination" which it cannot possibly do here because there is no record against which the Court may make such a determination. *See Gilchinsky*, 159 N.J. at 476. Defendant's attempt to circumvent the Court's fact-finding (and determination) process notwithstanding, the pleadings provide more than sufficient factual allegations, on balance, for the claim to move forward.

*N.J.S.A.* § 25:2-6 sets forth "badges of fraud" which New Jersey courts will use to engage in their fact-specific determination. *Id*. at 489. These "badges of fraud" "represent circumstances that so frequently accompany fraudulent transactions that their presence gives rise to an inference of intent." *Id*. (citing *Hasset v. Goetzman*, 10 F. Supp.2d 181, 188 (N.D.N.Y 1998)). These "badges" ask the Court to consider[11]

    a. The transfer or obligation was to an insider;

    b. The debtor retained possession or control of the property transferred after the transfer;

    c. The transfer or obligation was disclosed or concealed;

    d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

---

[11]    On a fully developed record and engaging in a fact-sensitive analysis.

e. The transfer was of substantially all the debtor's assets;

f. The debtor absconded;

g. The debtor removed or concealed assets;

h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and

k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

See *N.J.S.A.* § 25:2-26.  Of course, *Gilchinsky* does not stop at these "badges of fraud." Rather, it directs Courts to "balance the factors enumerated in *N.J.S.A.* § 25:2-26, **as well as any other factors relevant to the transaction.**" *Id* at 477.  Notably, while "the presence of a single factor, i.e. badge of fraud, may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." *Id.* (citing *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254-55 (1st Cir.1991)).

Here, the facts alleged tend to support AME's claim. First, the transaction was not disclosed to AME prior to consummation, and indeed not until nearly a month had passed.  *See* Compl. ¶¶ 26-39.  Second, AME had placed TRR on notice of its default and advised legal proceedings would commence if the debt was not paid.  *See* Compl. ¶¶ 26-27, Keppler Cert. ¶ 5, Ex. B.[12]  Third, the transfer to H&B comprised substantially all of TRR's assets.  *See* Compl. ¶ 34-37.  To date, neither

---

[12]      The May 12th Notice is referenced in the Complaint but was not included as an exhibit thereto.  Insofar as the document is referenced in the Complaint, the Court may review it in this context without converting the Motion to one for summary judgment.  *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d at 560.

Ricotta or TRR have been served and cannot be located.  *See* Keppler Cert., ¶ 7.[13]  Fourth, TRR

appears to have terminated operations entirely after divesting itself of substantially all of its assets,

likely rendering it insolvent. *See* Compl. ¶ 37. Fifth, the transaction occurred within months of

TRR's material breach of the Subcontract and refusal to return, which occasioned the need to

replace them on the Project and substantially increased costs (in the millions of dollars), chargeable

to TRR under the terms of the Subcontract.[14]  *See* Compl. ¶¶ 25, 28 Keppler Cert. ¶ 6, Ex. C, §§

7, 11.  To the extent the exercise is necessary at this stage of the litigation, the Court should have

little difficulty finding that the allegations presently before the Court tend to show the APA was

the product of a fraudulent transfer.  Moreover, the Court may use this analysis to ascertain that

the pleadings meet and exceed the *Rule* 9(b) standard.

Therefore, and for the foregoing reasons, Defendant's Motion should be DENIED with

respect to the Fifth Count of the Complaint.

B.    **The Fourth Count of the Complaint is Properly Pled and Should be Sustained**

AME's Fourth Count, which sounds in breach of contract against H&B, is properly plead

under a theory of successor liability.  As noted above, successor liability may be found where – as

here – there is a finding of a fraudulent transfer. *See Thompson v. Real Estate Mortg. Network*,

748 F. 3d at 150 ("transaction is entered into fraudulently in order to escape responsibility for such

debts and liabilities") (citation omitted).  Defendant has not alleged that the Complaint fails to set

forth sufficient facts to establish a breach of contract claim, but for the argument that there was no

---

[13]    Plaintiffs anticipate filing a motion for substitute service in the near future to address the
apparent inability to locate and serve the Ricotta Defendants by traditional means.
[14]    The Subcontract is referenced in the Complaint but was not included as an exhibit thereto.
Insofar as the document is referenced in the Complaint, the Court may review it in this context
without converting the Motion to one for summary judgment.  *Pryor v. Nat'l Collegiate Athletic
Ass'n.*, 288 F.3d at 560.

fraudulent transfer sufficient to trigger liability under this theory.  Insofar as the Court should have little challenge finding the pleadings meet the requirements under *Twombly* and *Iqbal* for the fraudulent transfer claim for the purposes of this Motion, that argument is mooted.  In the absence of a substantive challenge to the allegations in the Fourth Count on their own merits, the Court should find Defendant has waived same.

Therefore, and for the foregoing reasons, AME respectfully requests the Court DENY Defendant's Motion with respect to the Fourth Count, as well.

## III.    IF THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THE CLAIMS STATED, AME SHOULD BE GIVEN LEAVE TO AMEND.

In the unlikely event that the Court should find Defendant's Motion compelling in whole or in part, AME respectfully requests the Court grant it leave to amend.  *Fed. R. Civ. P.* 15 states, in pertinent part:

**(a) Amendments Before Trial.**

(1) *Amending as a Matter of Course*. A party may amend its pleading once as a matter of course within:

    (A) 21 days after serving it, or

    (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) *Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

In the present instance, this Court will not hear the Defendant's Motion before the 21-day period has elapsed from the filing of the Motion, foreclosing the likelihood that an amendment as a matter of course is likely.[15]  Therefore, the Court has the authority to grant leave to amend, in

---

[15]    AME would not otherwise seek to amend.

the unlikely event this Court finds the pleadings deficient and requiring additional factual allegations to meet the requirements of *Rules* 8 and/or 9.  Leave to amend should be granted freely, unless there is a reason for denial, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *see also Arthur v. Maersk*, 434 F.3d 196, 204 (3d. Cir. 2006) ("Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility.").

Here, this matter is in its infancy, not all defendants have been served, and no prior amendments were sought, much less allowed.  To the extent amendment is necessary, it would be in good faith and to address shortcomings identified by this Court.  Amendment would not prejudice any party, or this Court, and would be made in good faith.  For these reasons, and to the extent amendment is warranted, AME respectfully requests the Court exercise its discretionary authority to grant leave for same.

[*Remainder of Page Intentionally Left Blank*]

## <u>CONCLUSION</u>

Wherefore, and for the foregoing reasons, Plaintiff A.M.E., Inc. respectfully requests this Court DENY the Defendant's Motion to Dismiss and award it counsel fees and costs for defending this motion, together with any and all other such relief the Court may deem just and appropriate under the circumstances.  Or, in the alternative, that the Court grant AME leave to file an amended complaint to address any shortcomings identified in the course of adjudicating this Motion.

Respectfully submitted by:

**TESSER & COHEN, P.C.**

/s/ *Steven Keppler*
Lee M. Tesser
Steven T. Keppler
946 Main Street
Hackensack, New Jersey 07601
ltesser@tessercohen.com
skeppler@tessercohen.com
*Attorneys for Plaintiff A.M.E., Inc.*

17