NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| A.M.E. INC., <br><br> Plaintiff, <br><br> v. <br><br> T.R. RICOTTA ELECTRIC, INC., *et al.*, <br><br> Defendants. | Civil Action No. 22cv5211 (EP) (CLW) <br><br> **OPINION** |

**PADIN**, **District Judge.**

Plaintiff A.M.E., Inc. alleges that Defendants T.R. Ricotta Electric, Inc. ("TRR") and TRR principal Thomas Ricotta ("Ricotta," collectively the "Ricotta Defendants") failed to honor the parties' electrical work subcontract for a project at Manhattan's Lincoln Center (the "Project"). Plaintiff also alleges that the Ricotta Defendants fraudulently transferred TRR's assets to Defendant Hatzel & Buehler, Inc. ("H&B"), a different electrical contractor, to avoid paying damages to Plaintiff. H&B now moves to dismiss the claims against it. For the reasons below, the Court will **DENY** the motion without oral argument.[1]

**I.    BACKGROUND**[2]

Plaintiff, a New Jersey corporation, hired TRR, a New York corporation,[3] as an electrical subcontractor to work on the Project. Compl. ¶¶ 16-17. Months later, general contractor Turner Construction Company (the "GC") advised Plaintiff that TRR's on-site foreman, in the GC and

---

[1] Local Civil Rule 78.1(b).
[2] With the exceptions and to the extent noted below, this section is based on the Complaint's well-pled factual allegations.
[3] Ricotta himself is a New York resident.

Project owner's estimation, was unsafe with respect to health and safety standards, refused to participate in safety meetings, and not generally competent. *Id.* ¶ 18. The GC, on behalf of itself and the Owner, requested that TRR provide a new foreperson. *Id.* ¶ 19.

Plaintiff conveyed this message to TRR, which refused to replace its foreperson, left the Project, and did not return despite a written notice of default. *Id.* ¶¶ 20-22, 24. To complete TRR's unfinished work, remediate its deficient work, and maintain the Project schedule, Plaintiff retained a different subcontractor at substantial additional cost. *Id.* ¶¶ 23, 25. On May 12, 2022, Plaintiff provided TRR with additional notice of default and damages by email and certified mail. *Id.* ¶ 26.

Two weeks later, on May 26, 2022, TRR entered into the Agreement for Sale and Purchase of Assets, an asset-only purchase agreement (the "Agreement"), with H&B, a Delaware corporation. Compl. ¶¶ 3, 28. The Agreement "was the product of a period of due diligence and negotiation" between TRR and H&B, which included the time period that Plaintiff hired TRR to work on the Project. *Id.* ¶ 30. The Agreement transferred TRR's physical assets and numerous pending projects.[4] *Id.* ¶¶ 30, 34. The list did not, however, include the Project. *Id.* ¶ 31.

TRR was aware of the debt stemming from TRR's failure to complete its work on the Project. *Id.* ¶ 32. According to Plaintiff, this was evidenced by, among other things: (1) the due diligence period; (2) H&B hiring Robert Finn, formerly a TRR Vice President, to manage H&B's subsidiary, Blue Sky Controls; and (3) the Agreement's omission of the Project as an asset/liability transferred to H&B *or* one retained by TRR.[5] Plaintiff did not learn of the Agreement until May 26, 2022, after it had closed, and issued a formal notice of claim to H&B on June 22, 2022. *Id.* ¶

---

[4] According to Plaintiff, TRR retained projects that "were at such a late stage in their schedule it did not merit transfer to H&B." Compl. ¶ 35.
[5] According to Plaintiff, it did not discover Finn's role at Blue Sky Controls until September 22, 2022 due to its efforts to serve TRR & Ricotta. Opp'n at 4 n.5 (citing Keppler Certif. ¶¶ 2-4). For the reasons below, the Court does not consider this fact in resolving this motion.

2

33. Plaintiff asserts, in substance, that the Agreement evidences TRR's bad faith attempts to avoid its obligations under their Project subcontract. *Id.* ¶¶ 38-39.

Specifically, Plaintiff asserts seven counts: (1) breach of contract against TRR; (2) negligence against TRR; (3) breach of the covenant of good faith and fair dealing against TRR; (4) breach of contract against H&B;[6] (5) fraudulent conveyance against TRR and H&B; (6) piercing the corporate veil against TRR & Ricotta; and (7) civil conspiracy against all Defendants. *Id.* ¶ 40, *et seq.* Plaintiff filed this action in the Superior Court of New Jersey; H&B removed it to this Court,[7] and now moves to dismiss.[8] D.E. 1; D.E. 7 ("Mot."). Plaintiff opposes. D.E.s 9, 10 ("Opp'n"). H&B has replied. D.E. 12 ("Reply"). The Ricotta Defendants, who answered while the motion was pending, have taken no position.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. However, the allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While

---

[6] Under this theory, TRR's sale of assets to H&B was a fraudulent transfer, meaning that H&B would be liable to Plaintiff on a successor liability theory. *Id.* ¶¶ 56-59.
[7] The removal was based on complete diversity between the parties, satisfying 28 U.S.C. § 1332(a). D.E. 1 at 3.
[8] As of October 19, 2022, when Plaintiff filed its opposition papers, Plaintiff could not locate the Ricotta Defendants and therefore could not serve them. Opp'n at 13-14 (citing Keppler Cert. ¶ 7). While this motion was pending, however, on February 6, 2023, the Ricotta Defendants answered. D.E. 24.

"[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. As the moving party, the defendant bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For motion to dismiss purposes, the well-pled facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

## III. ANALYSIS

### A. Plaintiff has adequately pled a successor liability theory by pleading fraudulent transfer

#### 1. Successor liability through fraudulent transfer

H&B argues that Plaintiff's claims against H&B amount to a successor liability theory, *i.e.*, that the Agreement effectively transferred the Ricotta Defendants' liability to H&B along with the Ricotta Defendants' assets. The parties agree on the general rule of corporate successor liability: when a company sells its assets to another company, the acquiring company is not liable for the debts and liabilities of the seller simply because it has succeeded to the ownership of the seller's assets. *Lefever v. K.P. Hovnanian Enterprises, Inc.*, 160 N.J. 307, 310 (1999). Plaintiff's opposition brief clarifies that its successor liability theory is premised solely upon one of those exceptions: that the Agreement was a fraudulent transaction meant to escape TRR's liability to Plaintiff. *Id.* The Court therefore focuses on that theory.

The fraudulent transfer theory of successor liability is governed by the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. § 25:2-20, *et seq.* ("UFTA"); *see United Ass'n, Local Union No.*

4

*322 Pension Fund v. Schmidt*, No. 10-1815, 2011 U.S. Dist. LEXIS 18699, at *21 (D.N.J. Feb. 24, 2011).  UFTA's purpose is to prevent a debtor from placing his or her property beyond the creditor's reach.  *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463 (1999).  UFTA provides that a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the claim arose before or after the transfer, if the debtor made the transfer:

(i) with the actual intent to hinder, delay, or defraud any creditor; or
(ii) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and where the debtor either:
    (a) engaged in a business transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction,
    (b) intended to incur, or reasonably believed or should have known that they would incur, debts beyond its ability to pay.

*See* N.J.S.A. § 25:2-25; *see also Gilchinsky*, 159 N.J. at 475-76.

"Fraudulent intent, by its very nature, is rarely susceptible to direct proof."  *Id.* at 477 (cleaned up).  Thus, "[a]ctual intent often must be established through inferential reasoning, deduced from the circumstances surrounding the allegedly fraudulent act."  *Id.*  To that end, UFTA lists several "badges of fraud" to consider in determining actual intent:

a. The transfer or obligation was to an insider;
b. The debtor retained possession or control of the property transferred after the transfer;
c. The transfer or obligation was disclosed or concealed;
d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
e. The transfer was of substantially all the debtor's assets;
f. The debtor absconded;
g. The debtor removed or concealed assets;
h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.J.S.A. § 25:2-26; *Gilchinsky,* 159 N.J. at 476-477.

Courts must balance those factors, but may also consider "any other factors relevant to the transaction." *Id.* at 477. Even "a single . . . badge of fraud may cast suspicion on the transferor's intent," but "the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." *Id.* (cleaned up) (citing *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254-55 (1st Cir. 1991)).

   *2. The Court can consider the Agreement and default notice, but not the affidavits*

Plaintiff argues that its Complaint, as supplemented by the Certification of its Vice President Steven Keppler, pleads fraud sufficiently to overcome H&B's motion to dismiss. H&B disagrees, arguing that the Complaint fails to satisfy Rule 9(b)'s heightened fraud pleading standard.

As a preliminary matter, the parties contest whether the Court should consider certain documents other than the Complaint: the Agreement, Plaintiff's May 12, 2022 default notice to TRR, and dueling affidavits. H&B attaches the declaration of its Vice President Michael Goeller to explain, among other things, the Agreement's intent and to "refute" the Complaint's allegations. Reply at 5 (citing Goeller Decl.). And Plaintiff attaches the declaration of its attorney Steven Keppler to, in essence, allege more badges of fraud. Opp'n at 4 (citing Keppler Certif.).

Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010)). The Goeller Declaration attempts to argue the merits of the matter before discovery, while the Keppler Certification is, in essence, an effort to impermissibly amend the complaint in an opposition to a motion to dismiss. *See Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the

briefs in opposition to a motion to dismiss."). Thus, the Court will not consider the Goeller Declaration or Keppler Certification, as both argue matters outside the pleadings. Thus, the Court does not consider the facts they contain.

However, an exception to the general rule against considering matters extraneous to the pleadings exists for documents "integral to or explicitly relied upon in the complaint." *Id.* Because the Agreement and default notice are explicitly relied upon in the Complaint, the Court will consider them here. And even considering only the Complaint supplemented by the Agreement and default notice, the Complaint's allegations are sufficient to withstand Plaintiff's burden.

> 3. *The Complaint, supplemented by the Agreement and default notice, adequately plead H&B's successor liability via fraudulent transfer from TRR*

Rule 9(b) requires that allegations of fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b) (cleaned up). The purpose of Rule 9(b) is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Courts should not focus exclusively on the "particularity" language because doing so "fails to take [into] account the general simplicity and flexibility contemplated by the rules." *Christidis v. First Pennsylvania Mortg. Trust*, 717 F.2d 96, 100. Although the particularity requirement may be satisfied "by alleging the date, place, and time of the fraudulent behavior, the plaintiff is free to use alternative means to inject precision and substantiation into its allegations." *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535, 538-39 (D.N.J. 2008) (citing *Seville*, 742 F.2d at 791).

Here, in *addition* to specifying the fraudulent behavior, Plaintiff sufficiently pleads additional UFTA factors. First, the Agreement was "concealed" from Plaintiff until after consummation. Compl. ¶¶ 26-39; N.J.S.A. § 25:2-26(c). Second, the Agreement was executed

7

shortly after Plaintiff placed TRR on notice of its default and threatened legal proceedings. *See* Compl. ¶¶ 26-27; N.J.S.A. § 25:2-26(j). Third, TRR's transfer to H&B "comprised substantially all of TRR's assets." *See* Compl. ¶¶ 34-37; N.J.S.A. § 25:2-26(e). Fourth and finally, TRR appears to have terminated operations entirely after divesting itself of substantially all of its assets, likely rendering it insolvent. *See* Compl. ¶ 37; N.J.S.A. § 25:2-26(i). Accordingly, with or without facts extraneous to the Complaint, *e.g.*, Finn leaving TRR to work for an H&B offshoot,[9] there are sufficient badges of a fraudulent transfer alleged to save Plaintiff's fifth cause of action. That branch of H&B's motion will be denied.

### B. Because Plaintiff's fraudulent transfer claim survives, so do Plaintiff's other claims against H&B

H&B also argues that Plaintiff's Count Four (breach of contract) and Seven (civil conspiracy) claims should be dismissed because they rely on Plaintiff's fraudulent transfer theory. H&B Br. at 16 (citing *Murphy v. Implicito,* 392 N.J. Super. 245, 265 (App. Div. 2007) (breach of contract claim requires a valid contract between the parties) and *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 176 (2005) (civil conspiracy consists of two or more persons acting in concert to commit an unlawful underlying act)). H&B's argument is moot based on the Court's holding above that Plaintiff adequately pled fraudulent transfer. Accordingly, the remainder of the motion will also be denied. *See Fink v. EdgeLink, Inc.*, No. 09-5078, 2012 U.S. Dist. LEXIS 42656, at *8 (D.N.J. Mar. 27, 2012) (successor company can be held liable for predecessor company's breach by proving fraudulent asset transfer from predecessor to successor).

---

[9] That said, to the extent that Plaintiff seeks leave to amend to add that fact, Opp'n at 15, leave is granted provided that amendment occurs within 20 days of this Opinion's filing.

## IV. CONCLUSION

For the reasons above, the Court will **DENY** H&B's motion to dismiss (D.E. 10). To the extent that Plaintiff wishes to amend its Complaint, it may do so within 30 days of this Opinion's filing. An appropriate order follows.

Dated**:** June 6, 2023

                                                       Evelyn Padin, U.S.D.J.