# EXHIBIT A

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| A.M.E. INC.,<br><br>PLAINTIFF,<br><br>VS.<br><br>T.R. RICOTTA ELECTRIC, INC., THOMAS RICOTTA, HATZEL & BUEHLER, INC., JOHN/JANE DOES 1-10 (FICTITIOUS),<br><br>DEFENDANTS. | Case No.: 22-Cv-5211(EP)(CLW)<br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff, A.M.E., Inc. ("AME" or "Plaintiff") by and through its attorneys, Tesser & Cohen, hereby files this Complaint against Defendants, T.R. Ricotta Electric, Inc. ("TRR"), Thomas Ricotta ("Ricotta") and Hatzel & Buehler, Inc. ("H&B") (collectively, "Defendants") and alleges as follows:

**INTRODUCTION**

1.  This matter arises out of the altogether unprofessional and illegal actions of the Defendant TRR, while acting as a subcontractor to AME on a high-profile project in Manhattan.

2.  TRR unlawfully walked off the job without proper or adequate notice or justification, causing significant damages to AME measured in the millions of dollars.

3.  After walking off the job in violation of its contractual obligations, and after receiving written notice from AME of its damages relating to same, TRR entered into an asset-only purchase agreement, the "Agreement for Sale and Purchase of Assets" (the "APA") with Defendant Hatzel & Buehler, Inc. ("H&B").

1

4. Pursuant to the terms of the APA, TRR assigned a significant number of its then-existing contracts and jobs to H&B, while retaining others, as outlined in schedules annexed to the APA.

5. H&B is, in effect, a successor corporate entity to TRR and should be held accountable for its actions here.

6. The APA was a fraudulent transfer intended by TRR to evade liability to AME.

7. By virtue of these transactions and events, AME has been forced to expend millions of dollars it had not originally contracted for, entitling it to damages.

## PARTIES

8. At all times relevant hereto, Plaintiff, A.M.E., Inc. ("AME" or "Plaintiff") was and remains a corporation duly organized and existing pursuant to the laws of the State of New Jersey with its principal place of business located at 1275 Bloomfield Avenue, Building 2, Suite 17B, Fairfield, New Jersey 07004.

9. Upon information and belief, Defendant T.R. Ricotta Electric, Inc. ("TRR") was and remains a company duly organized and existing pursuant to the laws of the State of New York with its principal place of business located at 224-38 Braddock Avenue, Queens Village, New York 11428.

10. Upon information and belief, Defendant Ricotta is an individual and natural person and a resident of the State of New York residing in Glen Head, New York. Mr. Ricotta is the owner/operator of TRR and executed the Subcontract at issue on its behalf.

11. Upon information and belief, Defendant Hatzel & Buehler, Inc. ("H&B") was and remains a company duly organized and existing pursuant to the laws of the State of Delaware with

corporate offices in various states, including New Jersey, located at 5A South Gold Drive, Hamilton, New Jersey 08691.

12.     John/Jane Does 1-10 are fictitious parties, the proper identities of which are not presently known to the Plaintiff but who are, upon information and belief, officers of Defendant TRR and responsible for its conduct and operations in that capacity.  Plaintiff shall amend these pleadings as the identity/identities of these individuals are made known to it in accordance with the *Rules of Court*.

## JURISDICTION & VENUE

13.     This Court has jurisdiction over the parties and subject matter in this civil action pursuant to 28 U.S.C. § 1332(a) in that the parties are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.  The Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

14.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because at least one defendant is a resident of New Jersey for jurisdictional purposes.

15.     Moreover, § 13.11 of the Subcontract Agreement (the "Subcontract") at issue contains a forum selection clause which designates the State and federal courts of the State of New Jersey as the sole, exclusive venue for disputes arising thereunder.  By executing the Subcontract, and by availing itself of the protections and privileges of the laws of the State of New Jersey, Defendant TRR has consented to the jurisdiction of this Court.

## FACTUAL BACKGROUND

16.     AME was retained as a subcontractor related to a project known as Lincoln Center David Geffen Hall located at 10 Lincoln Center Place, New York, New York 10023 (the "Project").

3

17. On or about May 7, 2021, AME entered into the Subcontract with TRR wherein TRR was to perform the electrical portion of the HVAC controls installation on the Project.

18. On or about September 22, 2021, AME was advised by Turner Construction Company ("TCC") that TRR's on-site foreman was considered, by TCC and the Owner, to be unsafe with respect to on-site health and safety standards, refused to participate in regular and periodic safety meetings, and "in general does not meet the requirements of a competent person on this project."

19. Turner requested AME discuss the situation with TRR and secure an alternate to the onsite foreman with a competent individual.

20. AME, in good faith, brought Turner and the Owner's concerns to TRR's attention the same day, advising TRR's owner, Thomas Ricotta ("Ricotta") and its then-Vice President, Robert Finn ("Finn") via email of same.

21. In response, TRR advised they had no replacement foreman and, if their existing foreman was removed from the job, TRR would not return to the jobsite at all, saying "if he goes, we all go."

22. Thereafter, on or about September 22, 2021, TRR abandoned the Project, and despite due demand, failed and refused to return to the Project and complete its work.

23. TRR's work on the Project to that point was deficient and incomplete, requiring remediation at additional expense.

24. Written notice was provided by AME to TRR related to its default under the Subcontract Agreement, yet TRR failed to respond or return to the Project.

25. As a result, AME was forced to retain a replacement electrical contractor, Harrand Electrical Contractors, Inc., a New York incorporated entity, to compete and correct TRR's work at significant, additional expense of approximately $4.5 million.

26. On May 12, 2022, additional notice (the "May 12th Notice") was provided to TRR related to its default under the Contract and the damages incurred by AME. TRR was placed on notice that AME exercised its rights under the Subcontract to bring in a replacement contractor to complete TRR's Work at TRR's cost.

27. The May 12th Notice was transmitted to TRR by electronic mail and first-class ("regular") mail on May 12, 2022. The email was not returned as undelivered, and the letter has not been returned to sender. Therefore, upon information and belief, AME reasonably believes TRR received the May 12th Notice.

28. On May 26, 2022, TRR entered into the APA with H&B.

29. Upon information and belief, at some point after walking away from the Project and materially breaching the Subcontract Agreement, Finn left TRR and was hired by H&B to run, manage, and/or otherwise oversee H&B's subsidiary, Blue Sky Controls.

30. Upon information and belief, the APA was the product of a period of due diligence and negotiation by and between TRR and H&B which included the time period that TRR was hired to work on the Project and subject to the Subcontract.

31. The APA included as an exhibit a list which purported to be of all pending projects where TRR was working (the "Project List").

32. This Project List conspicuously failed to include the Project TRR was subcontracted to perform and which it had abandoned without cause, excuse, or lawful right in September 2021.

33. TRR was aware of the debt due to AME and that the Project was pending at the time the APA was entered into, yet the APA did not include the Lincoln Center David Geffen Hall Project in the list of projects.

34. Upon information and belief, Blue Sky Controls is the entity which took possession of those assets H&B purchased from TRR through the APA.

35. Upon information and belief, Finn was at all times relevant hereto in a position to know of the existence of the Project because he was partially responsible for same during his tenure with TRR.

36. AME did not learn of TRR's asset sale until after it was completed, and on June 22, 2022, issued a formal notice of claim to H&B relating to TRR's abandonment of the project.

37. The APA purported to transfer not only TRR's physical assets (including "tools, vehicles, construction equipment, inventory, supplies, machinery, rights to its name, estimating programs, and other assets listed [in an attached schedule]"), but also numerous "Work-In-Progress" projects, the proceeds from same, and all rights appurtenant thereto.

38. Upon information and belief, to the extent TRR retained projects or materials, it did so solely because those projects were at such a late stage in their schedule it did not merit transfer to H&B.

39. Alternatively, and upon further information and belief, to the extent TRR retained projects or materials, it did so because H&B was not interested in those assets as part of the APA.

40. Regardless, the APA required TRR transfer substantially all of its then-existing assets to H&B with the clear intention that: (a) it would soon cease operations entirely and (b) to the extent "TRR" continued to operate, it would do so under the H&B umbrella to Blue Sky

Controls under the management of Finn, who was intimately familiar with the transferred assets by virtue of his prior position with TRR.

41. Upon information and belief, TRR's failure to include the Project in the APA, coupled with its clear intention to cease operating, at least as TRR, in May 2022 signified a clear attempt to avoid its obligations under the Subcontract as identified in the May 12th Notice.

42. Specifically, the sale to H&B was not made in good faith insofar as it was made on the heels of AME's May 12th Notice of indebtedness and without disclosure to AME in violation of the New Jersey Uniform Fraudulent Transfer Act, *N.J.S.A.* §§ 25:2-20.

43. AME reasonably believes that, based on the foregoing, Robert Finn played a significant role in assisting TRR and Ricotta's hiding the Project as an illegal and improper means to avoid liability to AME for the amounts set forth herein because he had demonstrated knowledge of the Project based on his work on same and was in a position to put H&B on notice it was missing during the due diligence process and did not do so.

### FIRST COUNT
**(Breach of Contract as to TRR)**

44. AME repeats and realleges each and every one of the foregoing paragraphs as if it were set forth fully and at length herein.

45. AME and TRR entered into a written contract related to the Project: the Subcontract.

46. TRR failed to perform in accordance with its contractual obligations by walking off the job without legal excuse or justification and in violation of the express terms of the Subcontract.

47. TRR further breached the Subcontract by virtue of the fact that the work it did perform on the Project was defective and/or incomplete.

48. TRR further breached the Subcontract by virtue of the fact that it did not perform its contractual obligations in a good and workmanlike manner.

49. TRR's numerous material breaches of the Subcontract resulted in damage to the Project, defective work, and substantial delays in completing the work of the Project as a result of having to deal with TRR's defects and failures.

50. As a result of TRR's breach, AME will suffer and has suffered significant damages in the form of costs incurred to complete, delay damages, and costs incurred to repair TRR's defective and incomplete work, presently valued at approximately $4.5 million, not inclusive of counsel fees, costs, and/or interest.

**WHEREFORE**, Plaintiff, A.M.E., Inc. respectfully requests this Court enter judgment in its favor and award it:

(A) Compensatory Damages;

(B) Consequential Damages;

(C) Counsel fees and costs of suit;

(D) Any and all other such relief as the Court may deem just and appropriate under the circumstances.

## SECOND COUNT
**(Construction Defects – Negligence as to TRR)**

51. AME repeats and realleges each and every one of the foregoing paragraphs as if it were set forth fully and at length herein.

52. TRR owed a duty of care to AME to complete its work in a professional manner and according to industry standard practices.

53. TRR breached its duty to AME when it performed its work in a defective, unworkmanlike, and incomplete manner.

54. Because TRR failed to follow generally accepted standards relative to the construction of the respective Project, AME has suffered significant damages, including but not limited to repair of the defective and incomplete work, and consequential damages relating to severe damage caused to the Project.

**WHEREFORE**, Plaintiff, A.M.E., Inc. respectfully requests this Court enter judgment in its favor and award it:

(A) Compensatory Damages;

(B) Consequential Damages;

(C) Counsel fees and costs of suit;

(D) Any and all other such relief as the Court may deem just and appropriate under the circumstances.

## THIRD COUNT
### (Breach of the Covenant of Good Faith and Fair Dealing as to TRR)

55. AME repeats and realleges each and every one of the foregoing paragraphs as if it were set forth fully and at length herein.

56. Under New Jersey law, a covenant of good faith and fair dealing is implied into every contract entered into in the State, whether or not it is explicitly stated in the contract.

57. TRR breached this covenant of good faith and fair dealing contained or implied in the contracts due to TRR's actions or inactions including but not limited to the following: failing to perform its work and services pursuant to the contracts between the parties.

58. As a result of said breach, AME has suffered significant damages.

**WHEREFORE**, Plaintiff, A.M.E., Inc. respectfully requests this Court enter judgment in its favor and award it:

(A)   Compensatory Damages;

(B)   Consequential Damages;

(C)   Counsel fees and costs of suit;

(D)   Any and all other such relief as the Court may deem just and appropriate under the circumstances.

## FOURTH COUNT
### (Breach of Contract as to H&B)

59.   AME repeats each and every allegation contained in the preceding paragraphs, as if same were set forth at length herein.

60.   H&B, by virtue of the APA, acquired certain TRR projects, use of TRR's name, employees, management, good will and other assets.

61.   H&B knew, or reasonably should have known, about the Project because it retained Finn to manage assets it purchased from TRR via the APA and Finn was in a unique position to advise H&B of the Project's existence and/or non-inclusion in the Project Lists attached to the APA.

62.   TRR's sale of assets to H&B was a fraudulent transfer intended to evade liability.

63.   By virtue of the transfer of these assets, H&B is liable to AME on a theory of successor liability.

64.   As a result, Hatzel has successor liability and is responsible for the liabilities of TRR, including the debts due to AME.

**WHEREFORE**, Plaintiff, A.M.E., Inc. respectfully requests this Court enter judgment in its favor and award it:

    (A)    Compensatory Damages;

    (B)    Consequential Damages;

    (C)    Counsel fees and costs of suit;

    (D)    Any and all other such relief as the Court may deem just and appropriate under the circumstances.

## FIFTH COUNT
### (Fraudulent Conveyance as to TRR and H&B)

65.    AME repeats each and every allegation contained in the preceding paragraphs, as if same were set forth at length herein.

66.    By virtue of the APA, TRR transferred substantially all of its assets to H&B.

67.    This transfer was made at a time where TRR was fully aware of its indebtedness and/or potential for indebtedness to AME and had been aware of same for nearly a full year.

68.    The APA was executed in order to avoid obligations to AME, insofar as it effectively terminated TRR's business operations, use of its name, and transferred not only virtually all open projects, but also materials, equipment, accounts receivable, and other items to H&B.

69.    Finn, who was partially responsible for the Project with TRR, left TRR to work for H&B and manage those assets it purchased from TRR, knowing that the Project was not included on either the retained or transferred assets lists (e.g. the Project Lists).

70.    Finn's failure to disclose relevant knowledge to H&B about the Project served to further TRR and Ricotta's fraud.

71.    Or, alternatively, H&B's decision to move forward with the APA as constructed, despite knowing, via Finn, of the Project, served to further the fraudulent conveyance in order for TRR and Ricotta to avoid their debt to AME.

72. TRR is now essentially rendered insolvent with insufficient assets to pay for its obligations, including its debts to AME.

73. The sale or conveyance of TRR's assets to Hatzel is a fraudulent conveyance and/or fraudulent transfer under the New Jersey Uniform Fraudulent Transfer Act, *N.J.S.A.* § 25:2-20 *et seq*.

74. The sale and conveyance of TRR's assets was made with intent to delay, hinder, or defraud creditors of TRR including AME.

75. As a result, the fraudulent conveyance or other transfer of TRR's assets to H&B should be set aside and used to pay for its obligations to its creditors including AME, a receiver should be appointed to take charge of TRR's assets and/or the assets fraudulently transferred to H&B, and the parties be enjoined from disposing of same or otherwise disturbing the *status quo* until AME may be rendered whole.

**WHEREFORE**, Plaintiff, A.M.E., Inc. respectfully requests this Court enter judgment in its favor and award it:

(A) Compensatory Damages;

(B) Consequential Damages;

(C) Counsel fees and costs of suit;

(D) Preliminary and permanent injunctive relief; and

(E) Any and all other such relief as the Court may deem just and appropriate under the circumstances.

### SIXTH COUNT
**(Piercing the Corporate Veil/Alter Ego as to TRR and Thomas Ricotta and Does)**

76. AME repeats each and every allegation contained in the preceding paragraphs, as if same were set forth at length herein.

77. Ricotta and Does are the officers and owners of TRR and should be held responsible for the conduct of TRR.

78. Ricotta and Does failed to operate TRR independently and/or abide by corporate formalities: TRR served as a mere "alter ego" of Ricotta and Does.

79. Ricotta and Does exercised pervasive control over TRR and disregarded the separate nature of the business from their individual selves and they misused the corporate form for personal benefit and gain.

80. TRR was intentionally undercapitalized and its assets sold via the APA to H&B in order to evade responsibility for its debts to AME as a result of TRR and its officers' decision to unlawfully and without legal justification walk away from the Project.

81. Ricotta and Does intentionally utilized the APA as a means to divest TRR of any and all assets in order to evade responsibility to AME for TRR's breach of the Subcontract and the damages resulting from same.

**WHEREFORE**, Plaintiff, A.M.E., Inc. respectfully requests this Court enter judgment in its favor and award it:

(A) Compensatory Damages;

(B) Consequential Damages;

(C) Counsel fees and costs of suit;

(D) Any and all other such relief as the Court may deem just and appropriate under the circumstances.

**SEVENTH COUNT**
**(Civil Conspiracy as to All Defendants)**

13

82. AME repeats each and every allegation contained in the preceding paragraphs, as if same were set forth at length herein.

83. The Defendants hereto engaged in a series of actions in a concerted effort to commit the fraudulent transfer of TRR's assets to H&B.

84. The Defendants hereto did in fact engage in such a series of actions, namely by agreeing to enter into the APA and executing same, knowing that to do so would permit TRR to evade liability for its material breaches of the Subcontract by rendering it insolvent and/or unable to continue meaningful operations.

85. More specifically, upon information and belief, Finn was instrumental in assisting TRR and Ricotta in engaging in the fraudulent transfer for the reasons set forth elsewhere herein.

86. As a direct and proximate result of the Defendants agreement to engage in such unlawful acts, AME suffered significant damages.

**WHEREFORE**, Plaintiff, A.M.E., Inc. respectfully requests this Court enter judgment in its favor and award it:

(A) Compensatory Damages;

(B) Consequential Damages;

(C) Counsel fees and costs of suit;

(D) Any and all other such relief as the Court may deem just and appropriate under the circumstances.

Respectfully submitted by:

**TESSER & COHEN, P.C.**

By:  /s/ *Steven T. Keppler*
Steven T. Keppler
*Attorneys for Plaintiff,*

Dated: July 6, 2023

14

*A.M.E., Inc.*

## JURY DEMAND

AME hereby demands trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

AME hereby designates Lee M. Tesser, Esq. and Steven T. Keppler, Esq. as trial counsel.

## CERTIFICATION OF NO OTHER ACTIONS

Pursuant to *Rule* 4:5-1(b), I hereby certify that, to the best of my knowledge and belief, the subject matter of this action is not the subject of any other litigation pending in any court or any pending arbitration and is not contemplated in any court of arbitration. I further certify that no other parties need be joined in this action that I am aware of at this time.

I hereby further certify that all confidential, personal identifying information has been redacted from any documents filed herewith and shall be redacted from any documents filed by this office in the future per *Rule* 1:38-7(b).

I further certify that this pleading was electronically filed with the United States District Court for the District of New Jersey and served via ECF upon all counsel of record within the time prescribed by this Court's Order dated June 6, 2023 (D.E. No. 30).

                Respectfully submitted by:

                **TESSER & COHEN, P.C.**

                By:    /s/ *Steven T. Keppler*

Dated: July 6, 2023                   Steven T. Keppler
                                      *Attorneys for Plaintiff,*
                                      *A.M.E., Inc.*